**BROWNFIELD et al. v. KELLEY et al.**

**No. 2900.**

Court of Civil Appeals of Texas.
Eastland.

Dec. 7, 1951.

Rehearing Denied Jan. 11, 1952.

Park & Hemphill, Snyder, Shank, Dedman & Payne, Dallas, for appellants.

Stubbeman, McRae & Sealy, Midland, for appellee.

COLLINGS, Justice.

F. M. Brownfield and Mary R. Towle, individually and as independent executrix of the Estate of N. D. Towle, deceased, brought this suit against appellees, Frank H. Kelley and T. J. McDonnell, individually and as independent executors of the estate of J. Wright Mooar, deceased, under the Uniform Declaratory Judgments Acts, to have their rights and the duties of appellees, as executors, determined under and by virtue of an agreement dated January 15, 1931, between J. Wright Mooar, as first party, and H. G. Towle, F. M. Brownfield and others as second parties.

Appellees are residuary devisees and independent executors of the estate of J. Wright Mooar, deceased. H. G. Towle, who was one of the original plaintiffs, died subsequent to the filing of this suit and appellant, Mary R. Towle, individually and as independent executrix of the estate of H. G. Towle, deceased, was substituted as a party plaintiff. The case was tried before the Court without a jury and a judgment entered decreeing that appellants have no rights under the contract declared upon, and that appellees have no duties or obligations thereunder. From such judgment this appeal is brought.

The contract is set out below. The paragraph numbers are not a part of the original instrument but have been added for convenience.

"The State of Texas} Know All Men By
County of Scurry } These Presents:

"That we, the undersigned parties, all of Scurry County, Texas, do make and enter into the following contract and agreement, to-wit:

"(Par. 1) The undersigned J. Wright Mooar, party of the First Part and the hereinafter parties of the second part, to-wit: Robert H. Curnutte, H. G. Towle, F. M. Brownfield, O. P. Thrane, T. J. McDonnell, E. J. Anderson, G. B. Clark, Sr., H. E. Rosser, M. A. Carden and J. Wright Mooar.

"(Par. 2) The said J. Wright Mooar being the owner of certain lands in Scurry County, Texas and the Oil, Gas and Mineral Rights thereto, agrees to sell, transfer and assign to the above parties of the second part one half of the Royalty Production Rights for Oil, Gas and other minerals in the following described tracts of land all located in Block No. 97 of the H. & T. C. Ry. Co. Surveys in Scurry County, Texas,

to-wit: The N.W.¼ of Sec. No. 297; the N.W.¼ of Sec. No. 298; the N.W.¼ of Sec. 334; the N.W.¼ of Sec. No. 335; the S.E.¼ of Sec. No. 336; the N.E.¼ of Sec. 341; the N.W.¼ of Sec. 342; the N.W.¼ of Sec. No. 343; the N.W.¼ of Sec. 378 and the S.W.¼ of Sec. No. 380 being a total of 1,600 acres of land.

"(Par. 3) Said assignment to be for the sum of $800.00 per quarter section of land conveyed and a total consideration of $8000.00 for the above set out quarter sections of land. The above set out Royalty in said lands to be held by the above set out parties in a pool or jointly as hereinafter set out or as they may agree among themselves to hold same, each holding in said Royalty in proportion as he may pay in bears to the total sum paid to the said J. Wright Mooar. Each of said parties paying the following amounts to-wit: Robert H. Curnutte $800.00; H. G. Towle $800.00; F. M. Brownfield $800.00; O. P. Thrane $800.00; T. J. McDonnell $800.00; E. J. Anderson $800.00; G. B. Clark $800.00; H. E. Rosser $800.00; M. A. Carden $800.00; & J. Wright Mooar $800.00.

"(Par. 4) It is further agreed by and between the said J. Wright Mooar and the above mentioned parties, that the said J. Wright Mooar will at the end of one year from Jan. 15th, 1931, repay to any one or all the above named mentioned parties the original amount paid by him or them as set out above, if requested or demanded and the said J. Wright Mooar here and now obligates and binds himself and his heirs and administrators to repay to said party or parties said original sum so paid by him or them as set out above to said J. Wright Mooar.

"(Par. 5) It is agreed that if some of the above mentioned parties shall take advantage of the repayment clause of this agreement and some shall not elect to take advantage of said repayment clause, those not being repaid who shall elect to remain in this pool of said interest shall own in said Royalty above mentioned in proportion as the sum or sums paid by them shall bear to the total as set out above and those who shall take advantage of the repayment clause above mentioned shall

transfer all their interest back to the said J. Wright Mooar. It is agreed and understood, that the said J. Wright Mooar shall have 30 days notice of any intention to take advantage of the above set out repayment clause, either 30 days before the 15th of Jan. 1932 or he shall have 30 days after said demand in case it is made by Jan. 15, 1932.

"(Par. 6) It is further agreed by the said J. Wright Mooar that if at any time hereafter an Oil Well is started by any of the parties now holding a lease on any of the lands now owned by the said J. Wright Mooar or under any future lease while any of the parties mentioned above still hold an interest in the royalty set out above on the lands as mentioned above, that he, the said J. Wright Mooar, will transfer and assign to the holders of the royalty interest above mentioned One Half of the Royalty Production Rights to the Quarter Section of Land upon which said well is located under the same terms and stipulations covering the lands described above.

"(Par. 7) It is further agreed that the said J. Wright Mooar shall receive all lease rentals on the leases now on said lands and if the present leases expire or are forfeited the said J. Wright Mooar shall have the exclusive right to lease and release the lands above described.

"(Par. 8) It is further agreed by and between the second parties hereto that the above set out interest in the royalty on the above described lands shall be known as the J. Wright Mooar Royalty Pool and the said parties shall by a majority vote, each holder of an interest therein being allowed to vote in proportion to his payment as set out above and shall select one of their number to act as President, and in like manner some one to act as Vice President, and some one to act as Secretary and Treasurer and said officers shall be empowered to issue certificates to the various holders of interest herein showing proportion of such interest and in case any holder in this pool shall sell all or any part of his interest to take up and re-issue certificates showing to whom issued and the interest owned by him or them. If the above mentioned Pool is incorporated at any time by the holders

hereof any holder of a stock certificate who desires to take advantage of the repayment clause can do so in the same way as if the Pool was not incorporated by transferring to the said J. Wright Mooar his certificate showing his interest in the pool and receive pay for same in proportion as his interest shows to the original amount paid in.

"Witness our hands at Snyder, Texas, this the 15th day of Jan. A.D. 1931.

"J. Wright Mooar
"Party of the First Part

"Robert H. Curnutte          E. J. Anderson
"H. G. Towle                 G. B. Clark, Sr.
"F. M. Brownfield            H. E. Rosser
"O. P. Thrane                M. A. Carden
"T. J. McDonnell             J. Wright Mooar

"Parties of the Second Part." ·

Contemporaneously, with the execution of the above contract, J. Wright Mooar, executed and delivered to the second parties therein a royalty deed conveying one-half of the royalty interest in the land as described and provided in such contract.

The provisions of paragraph number 6, of the 1931 contract are urged by appellants as the basis of their right to relief in this suit. Appellants alleged in their petition as plaintiffs that J. Wright Mooar, at the time of the execution of such contract and agreement, owned other lands situated in Scurry County, describing same, and that the title to all of such other lands had become vested in appellees, Frank H. Kelley and T. J. McDonnell as residuary legatees under the last will of the said J. Wright Mooar, deceased. They alleged that some time in the year 1950, at a date well known to appellees but not within the knowledge of appellants, an oil well was started and completed as a producing well at a location on a portion of such other lands, to-wit: On the S.W.¼ of Section 336, Block 97, H. & T. C. Ry. Co. Survey in Scurry County, Texas. They further alleged that other oil wells had been started and completed on such lands in sections 336, 297, 298, 355 and other locations on lands owned by J. Wright Mooar at the time of the execution of the contract in 1931. Appellants alleged that they still held an interest in the royalty to the lands as described and provided in the contract in paragraph number 6 thereof, and that they were, therefore, entitled to "certain rights" in the other lands of the said J. Wright Mooar as therein provided. Appellants especially prayed the court to construe the contract so as to mean (a) that the plaintiffs are each entitled to purchase from the defendants an undivided ½₀ of the ⅛ royalty interest under each and every quarter section of land owned by said J. Wright Mooar at the time of the execution of this contract, which land is described above, on which there has been an oil well drilled, under the same terms and stipulations of said contract, that is, at a price of $10 per acre; or (b) in the alternative, that plaintiffs are each entitled to purchase from defendants an undivided ½₀ of the ⅛ royalty under the Southwest quarter of Section 336, Block 97, H. & T. C. Ry. Company Survey, Scurry County, Texas, under the same terms and stipulations of said contract, that is, at a price of $10 per acre, for the reason that the first oil will was drilled on this particular quarter section of all the lands owned by the said J. Wright Mooar at the time of the execution of this contract.

The evidence shows that in 1935, a well was drilled in search of oil on the N.E.¼ of Section 342, which was a part of the Mooar lands other than that specifically mentioned in the contract and royalty deed and that no oil was found or produced therefrom. It was further established that oil was first discovered on the Mooar lands in a well drilled on the S.W.¼ of Section 336 during the year 1950.

Appellants contend in their point number 1, that the court erred in rendering judgment against them because the contract of January 15, 1931, vests in them and each of them the right to have assigned to them on payment of the consideration therefor, at any time while they still hold an interest in the royalty conveyed to them under said agreement, an interest in the royalty production rights in and to a quarter section of J. Wright Mooar's land upon which a well in search of oil or gas may be commenced. They urge in points 7 and 9 that their right to acquire additional royalty under the contract was not limited to the first well

thereafter commenced on the lands owned by J. Wright Mooar, but may be exercised "at any time thereafter" when a well is commenced in search of oil or gas "while any of the parties * * * still hold an interest in the royalty * * * on the lands as mentioned * * *."

Although the language used in paragraph number 6 of the contract is not as clear as might be desired, when it is considered as a whole and in connection with the entire instrument, its effect is to vest in the second parties thereto an option under certain conditions to purchase an interest in one-half of the royalty upon an additional quarter section of J. Wright Mooar's land. The conditions provided as prerequisite to the right to exercise such privilege are: (1) that the party exercising same must "still hold an interest" in the original royalty conveyed to him, and (2) that such right must be exercised when "an oil well is started * * * on any of the lands" of the said J. Wright Mooar.

We are of the opinion that under the terms of the contract, appellants' right to purchase such additional royalty interest was limited to the first well started on such other lands of J. Wright Mooar. The language, " * * * an oil well is started," means one well and not any number of wells. When the first well in search of oil was started on any of Mooar's other lands an oil well was started. The only right given to appellants to acquire additional royalty was when such oil well was started. The right was, in effect, an option with a time limit for its exercise. When the time limit expired, the right was gone. The time limit under the contract was when "an oil well," meaning the first oil well was started on any of Mooar's other land.

An additional reason why the above interpretation of the language of the contract correctly indicates the intention of the parties thereto is found in the provision that appellants' right to acquire additional royalty was "under the same terms and stipulations" that the original royalty was acquired. It is evident that this provision referred to the price to be paid for the said royalty. At the time of the contract and

original royalty transfer in 1931, the royalty interest conveyed was non productive and the price paid therefor, ($800 for one-half royalty interest in one quarter section), was indicative that the royalty was what would be termed "wildcat acreage." Although there might be an increase in the value of the acreage, the beginning of the first well thereon did not change its wildcat status. After the drilling of the first well, however, there could be a decided change in the status of the acreage, as well as an enormous increase in its value. A contract by Mooar to permit appellants to wait until a producing oil well was discovered on his land and to then select and purchase a quarter section upon which a subsequent well was started, at a price they paid for rank wildcat acreage would certainly have been a one-sided and unusual contract. If the language of the contract clearly and unmistakably indicated such an unusual and improvident agreement by Mooar, it would, of course, be the duty of courts to enforce it, but such is not the case. The more reasonable interpretation of paragraph number 6 is, as above indicated, that appellants' right to purchase additional royalty was limited to the time of the beginning of the first well in search of oil on Mooar's lands or within a reasonable time thereafter under all the circumstances. It is established that the first oil well drilled on Mooar's land after the 1931 contract was in 1935. Appellants had the right upon payment of the consideration therefor to acquire additional royalty under the terms of the contract when this well was started, or within a reasonable time thereafter. They failed to exercise this right before the expiration of the time limit provided in the contract and such right no longer exists. The trial court did not err in rendering a judgment against appellants and in holding that they are not entitled to any of the relief sought and prayed for, under the contract in question.

Since the disposition of the points discussed requires that the judgment be affirmed, it is unnecessary to consider other questions raised.

The judgment of the trial court is affirmed.